## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CAROLYN WISECARVER, individually, and
as SPECIAL ADMINISTRATOR of the
ESTATE of ELMER JOE WISECARVER,**

  **Plaintiff,**

  **v.**

**SUNRISE SENIOR LIVING SERVICES, INC.
d/b/a Sunrise Assisted Living of Lenexa and
SUNRISE SENIOR LIVING MANAGEMENT,
INC.,**

  **Defendants.**

**Case No. 2:22-CV-02296-JAR-ADM**

## MEMORANDUM AND ORDER

In this lawsuit, Plaintiff Carolyn Wisecarver, individually and as Special Administrator of the Estate of her deceased husband, Elmer Joe Wisecarver, brings claims against Defendants Sunrise Senior Living Services, Inc. d/b/a Sunrise Assisted Living of Lenexa, and Sunrise Senior Living Management, Inc. (collectively, "Defendants") for wrongful death medical negligence and medical negligence survival personal injury. This matter is before the Court on Defendants' Motion to Enforce Waiver of Jury Trial (Doc. 31). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies Defendants' motion without prejudice.

## I. Background

Plaintiff's now deceased husband ("Mr. Wisecarver") suffered from unspecified dementia with behavioral disturbance and altered mental status. Because of this, Plaintiff and her family decided to move Mr. Wisecarver into a long-term care home. Therefore, on December 31, 2020,

Plaintiff signed a Residency Agreement with Defendant Sunrise Assisted Living of Lenexa,[1] and Mr. Wisecarver moved in that day.  Nearly a year later, on November 14, 2021, Mr. Wisecarver died after accidentally drinking dishwashing detergent that had been inadvertently left out by one of Defendants' employees.

On June 27, 2022, Plaintiff initiated this lawsuit in Johnson County District Court, asserting two claims: (1) on behalf of herself, as Mr. Wisecarver's surviving spouse and heir-at-law of Mr. Wisecarver, as well as their other heirs-at-law of Mr. Wisecarver (Terri Kurtz and Janet Wisecarver) against Defendants for wrongful death medical negligence pursuant to K.S.A. § 60-1902; and (2) as Special Administrator of the Estate of Mr. Wisecarver against Defendants for medical negligence survival personal injury pursuant to K.S.A. § 60-1801.[2]  Included with Plaintiff's Complaint was a Demand for Jury Trial.[3]  Defendants removed the case to the District of Kansas on July 28, 2022.[4]

Defendants then filed the present motion, requesting that the Court strike Plaintiff's Demand for Jury Trial.  Defendants base this request on the fact that the Residency Agreement signed by Plaintiff, as Mr. Wisecarver's legal representative and attorney-in-fact, contained a conspicuous and agreed-to "Waiver of Trial by Jury" provision which states:

> **WAIVER OF TRIAL BY JURY: THE PARTIES TO THIS AGREEMENT HEREBY KNOWINGLY AND UNCONDITIONALLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY LAWSUIT OR COUNTERCLAIM THAT MAY BE FILED BY EITHER PARTY IN CONTRACT, TORT, EQUITY, OR BY STATUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR ANY SERVICES OR CARE PROVIDED BY THE COMMUNITY**

---

[1] *See* Doc. 34-1.

[2] *See* Doc. 1-4.

[3] *Id*. at 9.

[4] Doc. 1.

**TO THE RESIDENT. THE "COMMUNITY" SHALL INCLUDE THE MANAGER, OWNER and/or TENANT, AND ALL OF THEIR RESPECTIVE AFFILIATES, SUBSIDIARIES, PARENT COMPANIES AND ALL OF THEIR RESPECTIVE EMPLOYEES, AGENTS, CONTRACTORS, ASSIGNEES, OFFICERS AND DIRECTORS. IF THE UNDERSIGNED IS ANYONE OTHER THAN THE RESIDENT, THE UNDERSIGNED REPRESENTS THAT HE/SHE HAS FULL LEGAL AND EXPRESS AUTHORITY TO WAIVE THE RESIDENT'S, HIS/HER HEIR'(S), BENEFICIARIES, AND/OR ESTATE'S RIGHT TO A TRIAL BY JURY[.][5]**

Plaintiff opposes the motion, asserting that while the jury waiver provision may have been conspicuous, it was not knowingly and voluntarily signed by Plaintiff such that it should be binding on her.  In the alternative, Plaintiff argues, if the Court finds that the jury waiver provision should be enforced against Plaintiff at all, that the Court only enforce it as to Plaintiff's personal injury claim and not her wrongful death claim.  Defendants object, maintaining that the jury waiver provision should be enforced against Plaintiff on both counts.

## II.    Legal Standard

"The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment."[6]  Although "[t]rial by jury is a vital and cherished right,"[7] "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy."[8]  The jury trial waiver must be "knowing and voluntary."[9]  Although the Tenth Circuit "has not determined who carries the burden of

---

[5] Doc. 31-2 at 9–10.

[6] *Jacob v. City of New York*, 315 U.S. 752, 752 (1942); *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1061 (10th Cir. 2013) ("Trial by jury is the bedrock right of our legal system.") (citing *Jacob*, 315 U.S. at 752–53).

[7] *City of Morgantown v. Royal Ins. Co.*, 337 U.S. 254, 258 (1949).

[8] *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (citing *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir. 1942)).

[9] *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992).

demonstrating the knowing and voluntary nature of the waiver, 'the majority of courts have decided that the burden lies with the party seeking to enforce the contractual waiver.'"[10]

Courts generally look to four factors in determining whether a waiver was knowing and voluntary: (1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate contract terms.[11] "The ultimate question is 'not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair.'"[12]

## III.    Analysis

The Court finds that consideration of the four factors and all of the circumstances weighs against a finding that Plaintiff's waiver of her jury trial right was knowing and voluntary.  As set forth more fully below, while the jury waiver provision in the Residency Agreement was conspicuous, Defendants have not met their burden to establish that there was not a gross disparity in bargaining terms, that Plaintiff's business or professional experience supported a finding that the waiver was entered into knowingly and voluntarily, or that Plaintiff had an actual opportunity to negotiate the terms of the Residency Agreement as a whole, let alone the jury

---

[10] *See Boyd v. U.S. Bank Nat. Ass'n*, No. 06-2115-KGS, 2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007). (quoting *Beville Co. v. Sprint/United Management Co.*, No. 01-2524, 2006 WL 2921006, at *1 (D. Kan. Oct. 11, 2006)).

[11] *Webster Cap. Fin., Inc. v. Newby*, No. 12-2290-EFM, 2013 WL 589626, at *3 (D. Kan. Feb. 14, 2013) (quoting *Hulsey*, 966 F.2d at 581).

[12] *Woodward, Inc. v. ZHRO Solutions, LLC*, No. 18-cv-01468-PAB-STV, 2019 WL 1438076, at *2 (D. Colo. Mar. 31, 2019) (quoting *Allyn v. W. United Assurance Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004)).

waiver provision itself.  For these reasons, the Court denies Defendants' motion to enforce the jury waiver provision in the Residency Agreement without prejudice.[13]

Because the Court finds that the jury waiver provision here is unenforceable, it need not consider Plaintiff's alternative argument that her wrongful death claim is outside its scope. Before this Court would need to address the scope of the jury waiver provision and whether Plaintiff's wrongful death claim—or any other claim—is subject to it, Defendants must show that they have a right to enforce the jury waiver provision.[14]  They have not done so here.

### A.     The Jury Waiver Provision is Conspicuous

First, the Court finds—and Plaintiff concedes—that the jury waiver provision in the Residency Agreement was conspicuous.  It is located in its own paragraph, is printed in bold, capital letters in the same font size as the rest of the Residency Agreement (not a smaller font size), and is clearly labeled "Waiver of Trial by Jury", with the label underscored.[15]  For these reasons, the Court finds that the waiver clause was conspicuous, supporting a finding that the waiver was knowing and voluntary.

---

[13] *See, e.g., Webster*, 2013 WL 589626, at *3 (Denying without prejudice motion to enforce jury trial waiver and noting that, "[c]ourts in this district have properly denied a motion to strike a jury trial when the record was insufficient to establish the parties' respective experience or bargaining power.") (citing *Bevill Co., Inc. v. Sprint/United Mgmt. Co.*, 304 F. Appx. 674, 682 (10th Cir. 2008) (denying motion to enforce jury trial waiver without prejudice because it lacked sufficient evidence to determine whether the waiver was voluntary)).

[14] *See, e.g., Foxfield Villa Associates LLC v. Robben*, No. 12-2528-CM, 2017 WL 3085780, at *2 (D. Kan. July 20, 2017) ("But before this court would address what the scope of the waiver should be, and whether the waiver provision should apply to particular claims, defendants must show that they have a right to enforce it. They have not.").

[15] *See, e.g., Walker v. SC Realty Servs., Inc.*, No. 15-cv-9932-JAR-TJJ, 2016 WL 4245487, at *3 (D. Kan. Aug. 11, 2016) (finding that jury trial waiver was conspicuous because it was located in its own paragraph, was printed in the same size font as the rest of the agreement, and was clearly labeled); *Boyd*, 2007 WL 2822518, at *18 (finding that jury trial waiver was conspicuous because it was stated in bold and in all capital letters).

**B.**     **Defendants Have Not Met Their Burden of Establishing That There Was Not a Gross Disparity in Bargaining Power Between the Parties**

Second, the Court considers whether there was a gross disparity in bargaining power between the parties.  At the outset, the Court notes that while "a disparity in bargaining power exists in most transactions between a commercial party and an individual,"[16] such as we have here, "the relevant inquiry is whether this disparity was 'gross.'"[17]  In *Boyd v. U.S. Bank Nat. Ass'n*, the court concluded that "[i]n a commercial situation, [showing a gross disparity] requires *more* than the one party in need of funds or the services provided by the other party."[18]  While the court found that there was a disparity in bargaining power between the plaintiff, an individual, and the defendant lender, the disparity was not gross, because the plaintiff had shopped around for other lenders but ultimately affirmatively chose the defendant lender because of its favorable loan terms.[19]  Because the evidence showed that the plaintiff could have rejected the defendant lender's offer, the court declined to find a gross disparity between the parties.[20]

Here, while it is clear that Plaintiff was in need of Defendants' services such that at least *some* disparity between their bargaining powers existed, neither party has submitted any affidavits, depositions, or any other such documentation with facts to show or rebut the presence of a *gross* disparity.  Plaintiff argues that the bargaining power between the parties was unequal because she had "severely limited" choices when accepting Defendants' services,[21] which, if true, would make her situation distinguishable from the plaintiff's in *Boyd*.  Defendants, on the

---

[16] *See Boyd*, 2007 WL 2822518, at *19.

[17] *Id.* (quoting *Bevill Co. v. Spring/United Mgmt.*, No. 01-2524-CM, 2007 WL 1266675, at *2 (D. Kan. April 30, 2007)).

[18] *Id.* at *18 (citing *Phoenix Leasing v. Sure Board, Inc.*, 843 F. Supp. 1379, 1384 (D. Nev. 1994)).

[19] *Id.*

[20] *Id.*

[21] Doc. 34 at 6.

other hand, assert that, like in *Boyd*, Plaintiff "was under no obligation to enter into any agreement" with Defendants, as she could have taken her business elsewhere if she did not like the terms of the Residency Agreement or could have proposed alternative language, but she did not do so.[22]

There is no evidence in the record to support the parties' respective allegations. For example, neither side offers evidence regarding other options Plaintiff had to obtain care for Mr. Wisecarver, or what the practical consequences would have been if she had caused delay in accessing care for the decedent by negotiating the terms of the Residency Agreement. Therefore, the Court finds that more evidence is necessary to determine whether Plaintiff suffered from such a gross disparity in bargaining power that her agreement to the jury waiver clause was involuntary. However, because the burden of proof lies with Defendants, and because Defendants have failed to provide any evidence to support the purported strength of Plaintiff's bargaining power,[23] the Court necessarily concludes that this factor weighs against a finding that the waiver was knowing and voluntary.

### C.    Defendants Have Not Met Their Burden of Establishing That Plaintiff's Business or Professional Experience Supports a Finding of Knowing and Voluntary Waiver

Third, the Court analyzes Plaintiff's business and professional experience. While Defendants' motion includes a subsection titled "Plaintiff's professional experience weighs in favor of enforcement," that subsection does discus any business or professional experience that

---

[22] Doc. 35 at 5.

[23] The only evidence Defendants point to with regard to this section, aside from the Residency Agreement itself, is the Durable Power of Attorney signed by Plaintiff (Doc. 31-1). In the Court's view, this is not evidence of any strength or weakness in Plaintiff's bargaining power, as one's authority to enter into a contract on another's behalf does not automatically equate to one's ability to knowingly and voluntarily enter into said contract.

Plaintiff does or does not have.[24]  Rather, Defendants merely reassert their argument that the
Durable Power of Attorney granted Plaintiff sufficient *authority* to sign the Residency
Agreement on behalf of the decedent, which does not speak to whether Plaintiff has business or
professional *experience* that would aid her in knowingly and voluntarily entering into a contract.
Defendants' reply brief skips discussion of this factor altogether.[25]

Plaintiff, on the other hand, explains that her highest level of education is "some college,"
and that she then worked for Southwestern Bell Telephone company as an office clerk and a
technician.[26]  Plaintiff relies on *Walker v. SC Realty Servs., Inc.*,[27] and argues that unlike the
plaintiff there, who had been a previous owner of the business on the other end of the contract at
issue, Plaintiff has no business experience that would have been helpful to her in negotiating the
contractual provisions, such as the jury waiver clause, here.[28]  Courts in this District have found
an individual's business or professional experience to be sufficient for purposes of this analysis
when, for example, the individual has business degrees and familiarity with business processes,[29]
when the individual has entered into numerous contracts with the defendant before,[30] and when
the individual has continuously agreed to terms and conditions in pursuit of their professional

---

[24] Doc. 31 at 6–7.

[25] *See* Doc. 35 at 4 (addressing only whether Plaintiff's position as decedent's "Responsible Party" pursuant to the Durable Power of Attorney constituted "sufficient sophistication and experience," but not whether Plaintiff had sufficient business or professional experience).

[26] Doc. 34 at 6–7.

[27] No. 15-cv-9932-JAR-TJJ, 2016 WL 4245487, at *3 (D. Kan. Aug. 11, 2016)

[28] *Id.* at 7.

[29] *See Boyd v. U.S. Bank Nat. Ass'n*, No. 06-2115-KGS, 2007 WL 2822518, at *19 (D. Kan. Sept. 26, 2007) (finding that plaintiff, who received a B.S. in Business and an M.B.A., and who had worked in the financial realm, had sufficient business and professional experience to support a finding that she entered into a contract knowingly and voluntarily).

[30] *See Bandokoudis v. Entercom Kansas City, LLC*, No. 2:20-cv-02155-EFM-GEB, 2021 WL 1575222, at *2 (D. Kan. Apr. 22, 2021) (concluding that plaintiff's experience negotiating and entering into at least four previous contracts with defendant was sufficient to support a finding that she entered into the contract at issue knowingly and voluntarily).

endeavors.[31]  Defendants have produced no evidence that would support a finding that Plaintiff

shares any of these characteristics.  Because it is Defendants' burden, the Court finds that this

factor weighs against a finding that the waiver was knowing and voluntary.

### D.   Defendants Have Not Met Their Burden of Establishing That Plaintiff Had an Opportunity to Negotiate the Residency Agreement's Terms

Finally, the Court considers whether Plaintiff had an opportunity to negotiate the

Residency Agreement's terms.  At the outset, the Court acknowledges that, as Defendants point

out, parties are required to read an agreement they are signing.[32]  However, the Court notes that

this general rule "is not a rule of thumb, but one of equity and sense, which is subject to

exceptions."[33]  Therefore, while relying on this principle might win the day in determining

whether a contractual provision is unconscionable—where the burden rests with the party

seeking to avoid the provision's enforcement to prove the other side's deceptive practices—it

does little to move the needle in determining whether a contract was entered into knowingly and

voluntarily—where, as here, the burden rests with the party seeking to enforce the provision to

make such a showing.

In support of their argument, Defendants rely on *Fifth Third Bank v. KC II Insure Servs.,

LLC*,[34] which they contend stands for the proposition that "the mere opportunity to review the

terms of an agreement before signing satisfies the opportunity to negotiate contract terms."[35]

---

[31] *See Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR, 2022 WL 588889, at *4 (D. Kan. Feb. 25, 2022) (finding that defendant's professional experience counseled in favor of finding that the waiver was knowing and voluntary because defendant continuously agreed to the terms and conditions of plaintiff's website for the purposes of furthering her professional endeavors in selling nursing education materials).

[32] *See* Doc. 31 at 7–8 (citing *Oesterle v. Atria Mgmt. Co.*, 09-4010-JAR, 2009 WL 2043492, at *3 (D. Kan. July 14, 2009) (discussing whether an arbitration agreement was unconscionable)).

[33] 17A C.J.S. Contracts § 210 (citations omitted).

[34] No. 11-cv-02101-CM-DJW, 2011 WL 13228763, at *4 (D. Kan. April 29, 2011).

[35] Doc. 31 at 7; *see also* Doc. 35 at 6.

The Court's review of *Fifth Third Bank* did not leave it with the same impression.  Rather, the Court understands that decision to hold that while it was unclear how *much* negotiation took place, the fact that defendants were claiming fraudulent inducement satisfied the court that at least some representations—whether or not they were ultimately false—were made to plaintiffs, and thus there was at least some opportunity to discuss the terms of the agreement.[36]  The same cannot be said here.  Therefore, the Court finds Defendants' reliance on *Fifth Third Bank* misplaced.

The only evidence Defendants point to in support of their argument that Plaintiff had an opportunity to negotiate is the Residency Agreement itself, which states in the very last line of the 14-page document: "You acknowledge that the Community has explained the terms of this Residency Agreement to you."[37]  The Court does not find this evidence persuasive.  To be sure, Defendants merely allege that the Residency Agreement includes this language—notably, they do not go so far as to allege that the Community did, in fact, explain the terms of the Residency Agreement to Plaintiff, let alone provide Plaintiff the opportunity to negotiate its terms.  Indeed, Plaintiff signed the Residency Agreement the same day she moved Mr. Wisecarver into the long-term care facility.  Because Defendants have failed to present sufficient evidence that Plaintiff had the opportunity to negotiate the terms of the Residency Agreement, or that Defendants would have been willing to negotiate such terms, the Court finds that this factor weighs against a finding that the waiver was knowing and voluntary.

Having considered all of the factors—only one of which weighs in favor of enforcing the jury waiver provision—the Court finds that Defendants have failed to set forth sufficient

---

[36] *See Fifth Third Bank*, 2011 WL 1322763, at *4.

[37] Doc. 31-1.

evidence to prove that Plaintiff's waiver of her right to a jury trial was both knowing and voluntary such that her demand for jury trial be stricken.  Defendants' motion is therefore denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Enforce Waiver of Jury Trial (Doc. 31) is **denied without prejudice**.

**IT IS SO ORDERED.**

Dated: April 5, 2023

                                    S/ Julie A. Robinson
                                    JULIE A. ROBINSON
                                    UNITED STATES DISTRICT JUDGE